JOURNAL ENTRY AND OPINION
{¶ 1} Defendant-appellant, Daryle Mitchell, appeals his drug possession conviction. For the reasons that follow, we affirm.
 {¶ 2} Appellant was indicted on one count of aggravated robbery, a first-degree felony in violation of R.C. 2911.02, and one count of possession of drugs, a fifth-degree felony in violation of R.C. 2925.11. The jury found appellant not guilty of aggravated robbery, but guilty of possession of drugs. He was subsequently sentenced to a six-month prison term.
 {¶ 3} At trial, the victim, Ernest Pope, testified that while he was driving his vehicle at approximately midnight in the vicinity of St. Clair Avenue and Blenheim Road in the city of Cleveland, appellant approached his vehicle at a traffic light and asked for a ride. Pope allowed appellant to get into his vehicle. While in the vehicle, appellant asked Pope if he was gay, and Pope responded no. Appellant then asked Pope to drive him back to the St. Clair Avenue and Blenheim Road area. Pope testified that appellant asked him for $1, and when he said no, appellant grabbed $70 from the center console area in his vehicle. Pope testified that in response, he grabbed appellant, but then fled his own vehicle on foot when appellant brandished what he described as a large, rusty knife.
 {¶ 4} Pope testified that he later returned to the area where he initially encountered appellant, and observed appellant and another individual removing plumbing fixtures from an abandoned church. According to Pope, he called the police from a pay phone to report that he had been robbed, but he did not identify himself.
 {¶ 5} The police responded to the area on a crowd control call, and were occupied with controlling a large crowd that had gathered from nearby bars. Pope testified that he approached a police officer to inform him that he had been robbed, but due to the officer's attempt to control the crowd, appellant was unable to get the officer's full attention. Pope returned to his car, where he again observed appellant. Pope approached the same officer a second time and reported that he had been robbed.
 {¶ 6} Appellant was subsequently arrested and searched, and a broken antenna piece and a broken piece of coat hanger that were on his person both tested positive for cocaine. The antenna piece appeared burnt. The arresting officer also retrieved a knife with an approximate two-inch blade. The officer testified that he would not describe the knife as rusty. Further, the officer testified that from his experience with drug arrests, he recognized the coat hanger and antenna piece as items commonly used as a push rod and crack pipe.
 {¶ 7} At the conclusion of the State's case-in-chief, the defense made a Crim.R. 29 motion for acquittal without argument, which the court denied. Appellant then testified on his own behalf. Appellant testified that he has been smoking crack since 1995, and that at the time he encountered Pope he was "hustling" for crack. Appellant testified that Pope slowly drove by him, looked at him, and then turned around, came back, and stopped in front of him.
 {¶ 8} Appellant explained that he believed that Pope either wanted crack or to engage in homosexual activity. Appellant testified that Pope allowed him to get into his car and inquired of him how much oral sex would cost. Appellant testified that he told Pope he would let Pope perform oral sex on him for $20, but that he (appellant) needed to get high first. Appellant directed Pope to turn around and travel to a crack house where he could purchase drugs.
 {¶ 9} According to appellant, upon arriving at the crack house, the victim gave him $20 and he went into the house to make his purchase. However, after buying crack, appellant did not return to the victim's car; instead, he ran into an alleyway and smoked the crack. Appellant testified that Pope saw him come out of the crack house and run away, and followed him.
 {¶ 10} Appellant explained that he hid out in the alleyway for awhile, and when he thought it was safe, returned to the corner where he had initially encountered Pope to begin "hustling" again. At that time, appellant encountered a man who offered him $10 for helping him move an air conditioning unit. Shortly after helping the man, appellant was arrested and told that he was a suspect in an aggravated robbery.
 {¶ 11} Appellant testified that he told the police everything that had occurred that evening and voluntarily produced the crack pipe.
 {¶ 12} At the conclusion of all the evidence, the defense renewed its Crim. R. 29 motion for acquittal without argument, which the court again denied.
 {¶ 13} In his first assignment of error, appellant contends that the trial court erred in denying his Crim.R. 29 motion for acquittal. We disagree.
 {¶ 14} "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. (Jackson v. Virginia [1979], 443 U.S. 307,99 S.Ct. 2781, 61 L.Ed.2d 560, followed.)" State v. Jenks (1991),61 Ohio St.3d 259, 574 N.E.2d 492, paragraph two of the syllabus.
 {¶ 15} In State v. Thompkins, 78 Ohio St.3d 380,1997-Ohio-52, 678 N.E.2d 541, the Supreme Court of Ohio stated the following with regard to sufficiency of the evidence:
 {¶ 16} "`sufficiency' is a term of art meaning that legal standard which is applied to determine whether the case may go to the jury or whether the evidence is legally sufficient to support the jury verdict as a matter of law.' Black's Law Dictionary (6 Ed. 1990) 1433. See, also, Crim.R. 29(A) (motion for judgment of acquittal can be granted by the trial court if the evidence is insufficient to sustain a conviction). In essence, sufficiency is a test of adequacy. Whether the evidence is legally sufficient to sustain a verdict is a question of law. State v. Robinson
(1955), 162 Ohio St. 486, 124 N.E.2d 148. In addition, a conviction based on legally insufficient evidence constitutes a denial of due process. Tibbs v. Florida (1982), 457 U.S. 31,45, 102 S.Ct. 2211, 2220, 72 L.Ed.2d 652, 663, citing Jackson v.Virginia, [supra]." Id. at 386-387.
 {¶ 17} R.C. 2925.11 governs the crime of possession of drugs and provides that "[n]o person shall knowingly obtain, possess, or use a controlled substance." R.C. 2925.11(A).
 {¶ 18} Appellant contends that the State failed to prove he "knowingly" possessed a controlled substance. Appellant also argues that even though the "pipe" tested positive for cocaine, it was just a trace amount and thus he could not be found guilty of possession of drugs.
 {¶ 19} Appellant's contentions have been addressed by the Supreme Court of Ohio in State v. Teamer, 82 Ohio St.3d 490,1998-Ohio-193, 696 N.E.2d 1049. In that case, the defendant was convicted of drug abuse in violation of R.C. 2925.11(A). On appeal, the defendant argued that because the amount of cocaine detected was so minuscule, he should not have been charged with drug abuse, a felony offense. Instead, the defendant argued that he should have been charged with possessing drug paraphernalia, a prohibited act under R.C. 2925.14 and a misdemeanor offense. In considering the defendant's argument, the Court stated:
 {¶ 20} "In our view, the unambiguous language of R.C. 2925.11
punishes conduct for the possession of any amount of a controlled substance. It does not qualify the crime by stating that the amount of the drug must be of a certain weight. We may not insert an amount provision into the unambiguous language of the statute. Appellant argues that because only a trace of cocaine was detected, it is drastically unfair to charge him with a felony crime when another statutory provision is more applicable. However, we find that this argument is better addressed to the General Assembly. We must apply the statute as written.
 {¶ 21} "Accordingly, we find that the quantity of a controlled substance is not a factor in determining whether a defendant may lawfully be convicted of drug abuse, in violation of R.C. 2925.11(A). As long as there is scientifically accepted testimony from which a factfinder could conclude beyond a reasonable doubt that a controlled substance was present, a conviction for drug abuse pursuant to R.C. 2925.11(A) will not be reversed based on the amount of contraband involved." Teamer,
at 491-492.
 {¶ 22} In this case, the scientific examiner for the Cleveland Police Department testified that she analyzed the metal "push rod" and the "crack pipe" that were found on appellant's person and determined that both contained the presence of cocaine. Her testimony was scientifically accepted testimony from which a factfinder could conclude beyond a reasonable doubt that cocaine was present. Thus, we are not persuaded by appellant's argument as to the quantity of cocaine found.
 {¶ 23} Further, we also disagree with appellant's argument that there was insufficient evidence to prove that he knowingly possessed cocaine. In addressing the issue of knowledge inTeamer, supra, the Supreme Court of Ohio noted that:
 {¶ 24} "In Ohio, juries are instructed that the element of knowledge is to be determined from the attendant facts and circumstances particular to each case. `Since you cannot look into the mind of another, knowledge is determined from all the facts and circumstances in evidence. You will determine from these facts and circumstances whether there existed at the time in the mind of the defendant an awareness of the probability that * * *.' 4 Ohio Jury Instructions (1997), Section 409.11(3). Likewise, case law instructs, `Intent can never be proved by the direct testimony of a third person and it need not be. It must be gathered from the surrounding facts and circumstances.' State v.Lott (1990), 51 Ohio St.3d 160, 168, 555 N.E.2d 293, 302
(Citation omitted.)
 {¶ 25} "Thus, whether a person charged with drug abuse in violation of R.C. 2925.11 knowingly possessed, obtained, or used a controlled substance is to be determined from all the attendant facts and circumstances available. If there is sufficient evidence such that a reasonable trier of fact could have found that the state had proven guilt beyond a reasonable doubt, a reviewing court may not reverse a conviction. State v. Jenks
(1991), 61 Ohio St. 3d 259, 574 N.E.2d 492, paragraph two of the syllabus." Teamer, at 492.
 {¶ 26} Here, the jury heard evidence that appellant was standing on a corner at approximately midnight in an area known for drug activity. After being arrested in that area, a "crack pipe" and "push rod" which were on his person both tested positive for cocaine.
 {¶ 27} We find this evidence to be sufficient at the end of the State's case to establish that appellant knowingly possessed cocaine. Certainly, after the defense's case, in which appellant admitted crack cocaine usage that day, the evidence of knowledge was more than sufficient. Accordingly, appellant's first assignment of error is overruled.
 {¶ 28} In his second assignment of error, appellant argues that the conviction is against the manifest weight of the evidence.
 {¶ 29} The proper test to be utilized when addressing the issue of manifest weight of the evidence is set forth in Statev. Martin (1983), 20 Ohio App.3d 172, 485 N.E.2d 717. TheMartin court stated:
 {¶ 30} "There being sufficient evidence to support the conviction as a matter of law, we next consider the claim that the judgment was against the manifest weight of the evidence. Here, the test is much broader. The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of the witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." (Citations omitted.) Id. at 175.
 {¶ 31} Moreover, the weight of the evidence and credibility of the witnesses are primarily for the trier of fact. State v.DeHass (1967), 10 Ohio St.2d 230, 227 N.E.2d 212, paragraph one of the syllabus. The power to reverse a judgment of conviction as against the manifest weight must be exercised with caution and in only the rare case in which the evidence weighs heavily against the conviction. State v. Martin, supra. A reviewing court will not reverse a verdict where the trier of fact could reasonably conclude from substantial evidence that the State has proved the offense beyond a reasonable doubt. State v. Eley (1978),56 Ohio St.2d 169, 383 N.E.2d 132.
 {¶ 32} After a review of the record, we do not find appellant's conviction for possession of drugs to be against the manifest weight of the evidence. The evidence demonstrated that appellant was standing on a corner at approximately midnight in an area known for drug activity. After being arrested in that area, a broken antenna piece and a broken piece of coat hanger, which are commonly used as a crack pipe and push rod, were on his person and both tested positive for cocaine. Further, by appellant's own admission, he has smoked crack for a number of years; at the time he encountered Pope he was "hustling" for crack; and he smoked it on the night of his arrest.
 {¶ 33} Accordingly, we find appellant's second assignment of error to be without merit.
Judgment affirmed.
It is ordered that appellee recover from appellant costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Common Pleas Court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Cooney, P.J., and Karpinski, J., concur.